ELIZABETH A. McCLANAHAN, Judge.
A jury convicted Germaine Delano Adams of second-degree murder and use of a firearm in the commission of a felony and sentenced him to thirty-three years in the penitentiary. He argues the trial court erred in denying his motion to suppress and admitting evidence seized from his residence under the *741 good faith exception to the search warrant requirement. Adams also contends the trial court erred in admitting hearsay evidence from a gun manufacturer’s catalog. For the following reasons, we affirm.
BACKGROUND
On review of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). In the early morning hours of June 18, 2004, Christopher Junior Hairston was shot and killed on Virginia Oaks Court in Henry County. Officers responding to the scene found his body in the road on Virginia Oaks Court. Four bullet casings found near Hairston’s body were later determined to have been fired from a 9mm Glock pistol. Later the day of the shooting, Sergeant Lane Perry and Investigator Steve Burton relayed information provided by witnesses concerning the shooting to Investigator Scott Barker.
Barker prepared and signed a “Criminal Complaint” (hereinafter “complaint”) wherein he swore under oath before Magistrate E. Whitney Smith, who also signed the complaint, that “[biased on information received from witnesses,[1] on [June 18, 2004], the accused—Germaine Delano Adams shot the victim Christopher Junior Hairston in the neck which resulted in the death of the victim. The incident occurred at approximately 0137 hrs on Virginia Oaks Ct. in Henry County, Va.” On the reverse side of the complaint, Barker further wrote, “£j]ust prior to the shooting Germaine Delano Adams and Christopher Junior Hairston were arguing over $20 that Christopher Junior Hairston owed Germaine D. Adams.” The complaint stated Adams’s address is “101 Va. Oaks Ct., Ridge- *742 way, Va. 24148” and was sworn to before Magistrate Smith on June 18, 2004 at 4:41 p.m.
Barker then prepared an affidavit that was also signed by Magistrate Smith, stating that Hairston had received a fatal gunshot wound to the neck at approximately 1:37 a.m. on June 18, 2004, “while he was on Virginia Oaks Ct.” The affidavit noted, “[biased on witness statements, the victim Christopher Junior Hairston was in a[sic] arguement [sic] with Germaine Delano Adams at the time he was shot.” The affidavit specifically identified the residence to be searched by providing the following directions:
Turn on to Virginia Oaks Ct. from Axton Rd. ... The trailor [sic] to be searched will be the third trailor [sic] on the left on Virginia Oaks Ct. The residence is light grey [sic] with dark grey [sic] trim. The residence has a front wood stoop with three steps and two rails. The residence has a white front door and a satellite dish on the roof at the rear.
The affidavit further stated “there are no visible number markings on the residence,” but it “ha[d] what appeared] to be a video camera on the outside.” It requested authorization to search for videotapes, digital recordings, audio recordings, weapons (including but not limited to a 9mm caliber weapon), ammunition, and “any and all evidence relating to the murder of Christopher Junior Hairston.” See infra n. 7.
The affidavit identified Sgt. Perry, Criminal Investigations Supervisor-Henry County Sheriffs Office, who was investigating at the scene, as Barker’s source of information.[2] Burton, who had also investigated the crime scene, assisted Barker with the affidavit.[3] From Perry, Barker obtained a “description of the trailer, how to get to it, and so on and so forth.” From Burton, Barker obtained the “probable cause information.” Barker, believing he had probable cause for the issu *743 anee of a search warrant, submitted the affidavit on June 18, 2004 at 5:00 p.m., nineteen minutes after he submitted the complaint. On June 18, 2004, at 5:17 p.m., Magistrate Smith issued a search warrant for “101 Virginia Oaks, Ridgeway, VA 24148.” The search warrant contained detailed physical directions as set forth in the affidavit to the residence to be searched and authorized seizure of the items requested in the affidavit. The search warrant was executed at 6:23 p.m. on the same day.
During the search of the master bedroom in Adams’s residence, from a coat pocket, police seized seven Federal brand 9mm Luger cartridges in a plastic bag that were identical to the casings found near Hairston’s body. The officers also recovered, among other items, a pistol cleaning kit suitable for a 9mm handgun, two Uncle Mike’s gun holsters, and from a closet, fifteen Winchester brand 9mm cartridges in a Federal ammunition box. No weapons were recovered.
Prior to trial, Adams moved to suppress the evidence seized from his residence and all his related statements, contending, inter alia, that “[n]either the search warrant nor the affidavit allege[d] that the house to be searched [was] the defendant’s residence,” “that they [did] not link the defendant in any way to that residence,” and that they “[did] not contain any probable cause indicating that the items to be searched for [were] located in that house.” The trial court found the warrant invalid because it was “so thin ... as far as nexus” on probable cause.
Counsel then focused their arguments on the applicability of the good faith exception to the warrant requirement, and the trial court took the matter under advisement. Initially, the trial court ruled the good faith exception did not apply because the affidavit was “so lacking in indicia of probable cause as to render official belief in its existence as unreasonable.” Subsequent to this ruling and before Adams’s trial, this Court decided Anzualda v. Commonwealth, 44 Va.App. 764, 607 *744 S.E.2d 749 (2005) (en banc).[4] The trial court granted the Commonwealth’s motion to reconsider its ruling in light of the Anzualda holding. By letter opinion, the trial court reversed itself and denied the motion to suppress on the ground that the good faith exception applied because, as stated in Anzualda, “there is some indicia of probable cause in the underlying affidavit” and, thus, “the good faith exception applies in this case.” Id. at 781, 607 S.E.2d at 757 (emphasis in original). The trial court also stated “[t]he officer acted reasonably in believing the warrant to be valid.”
At trial, Barker identified and described the items seized from Adams’s residence. When asked about the shoulder holsters, Barker specifically testified they were manufactured by “Uncle Mike’s” and were of two different sizes. The Commonwealth asked Barker to read from an “Uncle Mike’s” catalog the types of weapons the holsters were designed to fit. Adams objected on hearsay grounds. The Commonwealth stated the evidence was not hearsay or was admissible as a “business record” or “public record.” The trial court overruled the objection. Forensic evidence proved Hairston was shot with a Glock pistol. Based upon the “Uncle Mike’s” catalog, Barker stated one of the holsters found in the residence was designed to fit certain Glock 9mm weapons.
An eyewitness to the murder also testified that Adams and Hairston had argued over money, Adams “walked up on [Hairston] -with the gun and pushed him in the shoulder and [Hairston] tried to grab [Adams’s] arm and that is when *745 [Adams] shot him.” This "witness further testified that he heard “two or three” shots, “and then [Adams] stood over top of [Hairston] and [Adams] shot him.” Finally, the witness testified that Adams “ran in his trailer” after he shot Hairston. Another witness testified that he heard arguing, then “some [gun]shots went off,” and Adams ran into his residence after the shooting. The jury convicted Adams of second-degree murder and the use of a firearm in the commission of a felony.
STANDARD OF REVIEW
On appeal, Adams contends the trial court erred in applying the good faith exception to the exclusionary rule.[5] Though we defer to the trial court’s findings of historical fact unless plainly wrong or without evidence to support them, we review the trial court’s determination that the good faith exception applied de novo. United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir.2004); McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); see also Anzualda, 44 Va.App. at 773-74, 607 S.E.2d at 753-54; Barkley v. Commonwealth, 39 Va.App. 682, 689-90, 576 S.E.2d 234, 237-38 (2003). Furthermore, when a defendant challenges the denial of a motion to suppress, he has the burden to show that the trial court’s ruling constituted reversible error. Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003). “ ‘Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts.’ ” *746 Barkley, 39 Va.App. at 690, 576 S.E.2d at 238 (citations omitted).
ANALYSIS
A. Application of the Good Faith Exception
The exclusionary rule is a judicial creation which, under certain circumstances, prevents evidence obtained in violation of one’s Fourth Amendment rights from being admitted into evidence against him in a criminal prosecution. Commonwealth v. Ealy, 12 Va.App. 744, 750, 407 S.E.2d 681, 685 (1991). The United States Supreme Court has, however, “rejected indiscriminate application of the [exclusionary] rule, and [has] held it to be applicable only where its remedial objectives are thought most efficaciously served—that is, where its deterrence benefits outweigh its substantial social costs.” Hudson v. Michigan, — U.S. —, —, 126 S.Ct. 2159, 2163, 165 L.Ed.2d 56 (2006) (citations and internal quotation marks omitted).
Evidence seized pursuant to a warrant should be suppressed “only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.” United States v. Leon, 468 U.S. 897, 918, 104 S.Ct. 3405, 3418, 82 L.Ed.2d 677 (1984). “The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.” Janis v. Commonwealth, 22 Va.App. 646, 653, 472 S.E.2d 649, 653, aff'd en banc, 23 Va.App. 696, 479 S.E.2d 534 (1996) (citation and internal quotation marks omitted). “The premise for the good faith exception lies in the belief that when officers rely in good faith upon a warrant subsequently quashed for lack of probable cause, suppressing the evidence will have no deterrent effect.” Marc Zamsky, Criminal Procedure: Inconsistent Application of Good Faith, 64 Temp. L.Rev. 801, 816 (1991) (citing Leon, 468 U.S. at 920-21, 104 S.Ct. at 3419); see also Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998). Thus, “evidence seized pursuant to [a] warrant is ... admissible if the officer executing the warrant reasonably believed that the warrant was *747 valid.” Tart v. Commonwealth, 17 Va.App. 384, 389, 437 S.E.2d 219, 222 (1993) (citation and internal quotation marks omitted). An officer ordinarily cannot be expected to question the magistrate’s determination of probable cause. Janis, 22 Va.App. at 653, 472 S.E.2d at 653.
Where a reasonable police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate’s probable cause determination and the evidence will not be excluded, even though the affidavit may not have provided the magistrate ... with probable cause to issue the warrant.
Colaw v. Commonwealth, 32 Va.App. 806, 810-11, 531 S.E.2d 31, 33 (2000) (citing Leon, 468 U.S. at 918-22, 104 S.Ct. at 3418-20).
Adams argues the affidavit was “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable” because it failed to link the place to be searched to the defendant in any way. See Atkins v. Commonwealth, 9 Va.App. 462, 464, 389 S.E.2d 179, 180 (1990) (quoting Leon, 468 U.S. at 923, 104 S.Ct. at 3421); see also Janis, 22 Va.App. at 653, 472 S.E.2d at 653. Although the affidavit alone may fail to link the place to be searched to Adams, the complaint, when read together with the affidavit, is sufficient.
An affidavit deficient on its face may, under appropriate circumstances, be rehabilitated with facts not included in the affidavit if the evidence establishes that the omitted facts were actually disclosed to the magistrate under oath or affirmation.[6] See McCary v. Commonwealth, 228 Va. 219, 231, *748 321 S.E.2d 637, 643 (1984); Derr v. Commonwealth, 242 Va. 413, 420, 410 S.E.2d 662, 665-66 (1991). We emphasize that, as to the facts supporting probable cause for issuance of a search warrant, see McCary, 228 Va. at 231, 321 S.E.2d at 644, “[a]n obviously deficient affidavit cannot be cured by an officer’s later testimony on his subjective intentions or knowledge.” United States v. Hove, 848 F.2d 137, 140 (9th Cir.1988); see also Janis, 22 Va.App. at 655, 472 S.E.2d at 655 (“To permit the total deficiency of the warrant and affidavit to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly erode the protections of the fourth amendment.” (citation and internal quotation marks omitted)).
Here, the record shows there were two sworn documents, a criminal complaint and an affidavit. Both were presented to and signed by the magistrate prior to her issuance of the search warrant, and both were executed within minutes of each other. The complaint states that based on witness statements, Adams shot Hairston and that Adams’s address was “101 Va. Oaks Ct.” The affidavit for the search warrant states that the place to be searched was on “Virginia Oaks Ct.” and contained detailed physical directions to the place to be searched, which “bore no visible number markings” on it.
Before submitting the affidavit for search warrant, Barker prepared and signed the complaint. In the complaint, Barker swore under oath before Magistrate Smith, who signed the complaint, that based on information provided by witnesses, *749 “on [June 18, 2004], the accused—Germaine Delano Adams shot the victim Christopher Junior Hairston in the neck which resulted in the death of the victim. The incident occurred at approximately 0137 hrs on Virginia Oaks Ct. in Henry County, Va.” On the reverse side of the complaint, Barker further wrote, “[j]ust prior to the shooting Germaine Delano Adams and Christopher Junior Hairston were arguing over $20 that Christopher Junior Hairston owed Germaine D. Adams.” The complaint also states Adams’s address is “101 Va. Oaks Ct., Ridgeway, Va. 24148” and was sworn to before Magistrate Smith on June 18, 2004 at 4:41 p.m.
The affidavit for the search warrant sworn under oath and signed by Barker before the same magistrate was submitted nineteen minutes after the complaint identifying Adams as the suspected murderer and listing his address as “101 Va. Oaks Ct.” The affidavit states “there are no visible number markings on the [trailer to be searched],” but specifically describes the particular residence to be searched and further provides detailed directions to the residence on ‘Virginia Oaks Ct.” The search warrant issued by the same magistrate, just minutes after the complaint and affidavit were submitted, states the premises to be searched as “101 Virginia Oaks” and also includes the specific directions, as supplied in the affidavit, to the residence on “Virginia Oaks Ct.”
When the complaint and affidavit are read together, it is clear that the sworn facts actually disclosed to the magistrate included the address and specific directions to the residence of the suspected murderer, Adams. We find that a reasonable officer, acting in objective good faith, reviewing the facts presented under oath to the magistrate, could have believed the magistrate had probable cause to issue the search warrant for Adams’s residence and that he could, therefore, rely on the warrant. See Anzualda, 44 Va.App. at 781-82, 607 S.E.2d at 757-58.
Our holding in Janis does not require a different result. Although Janis holds the court may look no further than the “four corners” of the affidavit for the search warrant in *750 determining whether an officer’s reliance on the magistrate’s probable cause determination was reasonable, in that case, nothing in the record indicated the magistrate was ever presented with any information reduced to sworn statements under oath or affirmation other than the affidavit for the search warrant. Janis, relying only on the sworn affidavit, reasons “[t]he Leon test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate,” and “does not extend ‘to allow the consideration of facts known only to an officer and not presented to a magistrate.’ ” 22 Va.App. at 654, 472 S.E.2d at 653-54 (quoting Hove, 848 F.2d at 140). Here, the officer relied in good faith on evidence before the magistrate, as indicated in the written facts sworn to under oath contained in the complaint and affidavit. This case is, therefore, consistent with the ratio decidendi of Janis.
While Adams argues the affidavit failed to connect him to the place to be searched, “the crucial element is ... whether it is reasonable to believe that the items to be seized will be found in the place to be searched.” United States v. Lalor, 996 F.2d 1578, 1582 (1993) (citation omitted); see also Anzualda, 44 Va.App. at 781-88, 607 S.E.2d at 757-61 (defect relating to the affidavit’s failure to provide sufficient nexus between weapon and defendant’s residence was cured where affidavit, containing some indicia of probable cause, established a nexus between weapon and premises by providing some facts linking the weapon to the premises to be searched); cf. Janis, 22 Va.App. at 653-54, 472 S.E.2d at 653 (affidavit supporting a search warrant “gave absolutely no indication that the fruits of criminal activity would probably be found at [the location searched]”).
It is well established that “the nexus between the place to be searched and the items to be seized may be established by the nature of the item[s] and the normal inferences of where one would likely keep such evidence.” United States v. Anderson, 851 F.2d 727, 729 (4th Cir.1988) (citation omitted); see also United States v. Gant, 759 F.2d *751 484, 488 (5th Cir.) (affidavit’s factual link to the search may be created through “normal inferences about the location of the evidence” (citation omitted)), cert. denied, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). “[B]ecause a reasonable police officer could also infer [the defendant] was keeping the [weapon and ammunition] at his home, the affidavit does establish a nexus—however slight—between the item[s] sought[7] and the premises to be searched. See, e.g., United States v. Maneti, 781 F.Supp. 169, 177 (W.D.N.Y.1991) (‘In the case of firearms ... [it is] reasonable [to] infer[ ] [that] ... one would likely keep such evidence [ ] at home.’).” Anzualda, 44 Va.App. at 784, 607 S.E.2d at 759 (footnote added); see also Gregory v. Commonwealth, 46 Va.App. 683, 621 S.E.2d 162 (2005) (reasonable to assume weapons kept in residence).
The affidavit at issue in Janis described the criminal activity and provided an address to be searched, but failed to indicate why it was being searched (e.g., the suspect resided there or was connected to that address). See Anzualda, 44 Va.App. at 784, 607 S.E.2d at 759. In the instant case, by contrast, the complaint and affidavit, when read together, indicate an objectively reasonable police officer could believe the magistrate knew Adams was the suspected murderer and lived on “101 Va. Oaks Ct.” at the residence specifically described with detailed directions. And, the officer could infer *752 that Adams, the suspected murderer living at that residence on 101 Va. Oaks Ct., would likely keep a murder weapon, ammunition, and weapon accessories, the items sought in the affidavit and search warrant, at his residence, thus establishing a nexus between the place to be searched and the items to be seized.
In this case, “there is no evidence that the police acted other than in good faith.” Tart, 17 Va.App. at 389, 437 S.E.2d at 222. The information presented to the magistrate was provided by investigating officers and based on statements by witnesses. See McCary, 228 Va. at 230-31, 321 S.E.2d at 642-44 (since affidavit contained allegations of fact known to victims, eyewitnesses, and investigating officers, information contained therein supported probable cause for issuance of warrant, and reasonable reliance on its validity); see also United States v. Perez, 393 F.3d 457, 462-65 (2004).
If the evils Leon sought to avoid are not present, the evidence should be admitted. Polston, 255 Va. at 504, 498 S.E.2d at 926; Derr, 242 Va. at 423, 410 S.E.2d at 667. Based on the information provided to the issuing magistrate, Barker’s “reliance on the magistrate’s determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.” Leon, 468 U.S. at 926, 104 S.Ct. at 3422; see also United States v. Carpenter, 360 F.3d 591, 595-96 (6th Cir.2004); Miles v. Commonwealth, 13 Va.App. 64, 71, 408 S.E.2d 602, 606 (1991), aff'd en banc, 14 Va.App. 82, 414 S.E.2d 619 (1992). Here, the officers conducted a search in good faith, “act[ing] reasonably under the authority of an apparently valid warrant.” McCary, 228 Va. at 232, 321 S.E.2d at 644; see Derr, 242 Va. at 423, 410 S.E.2d at 667. Finding the good faith exception to the exclusionary rule applies, we conclude the trial court did not err in admitting the items seized from Adams’s residence.
B. Objection to Hearsay Testimony
Adams contends the trial court erred in admitting, over his hearsay objection, Investigator Barker’s testimony about the contents of a gun manufacturer’s catalog, which he *753 “read from the catalog.” The Commonwealth contends Adams either did not preserve the objection with sufficient specificity or, in the alternative, if the trial court erred, the error was harmless.
Although we conclude Adams preserved the objection, assuming, without deciding, the trial court erred in admitting the evidence, we conclude such error was harmless. See Hope v. Commonwealth, 8 Va.App. 491, 497, 386 S.E.2d 807, 810 (1989), aff'd en banc, 10 Va.App. 381, 392 S.E.2d 830 (1990). The evidence showed that Adams and Hairston were arguing on Virginia Oaks Court. An eyewitness to the murder testified that Adams approached Hairston with a gun and pushed him in the shoulder, and when Hairston tried to grab Adams’s arm, Adams shot him. This witness further testified that he heard “two or three shots,” and then Adams “stood over top” of Hairston and shot him. Finally, the witness testified that Adams “ran in his trailer” after he shot Hairston. Another witness testified that he heard arguing, then “some [gunjshots went off,” and Adams ran into his residence after the shooting. The murder took place outside Adams’s residence. Hairston was killed by a close range gunshot wound fired from a dock pistol. Four 9mm bullet casings were found near his body, and analysis revealed that the shots were fired from a dock pistol. During a search of the master bedroom in Adams’s residence, from a coat pocket, police seized seven Federal brand 9mm Luger cartridges matching those found near Hairston’s body. Also in the master bedroom, police recovered, among other items, a pistol cleaning kit suitable for a 9mm handgun and two Uncle Mike’s gun holsters. In a Federal ammunition box in the closet, police recovered fifteen Winchester brand 9mm cartridges.
The two Uncle Mike’s gun holsters recovered were size zero and size fifteen. Barker testified that the size fifteen is for semi-automatic handguns and read from the manufacturer’s catalog the list of firearms that fit the size fifteen holster, which included a 9mm Glock pistol. This testimony linking the catalog list to the holster found in Adams’s residence is mere harmless error in light of the eyewitnesses’ testimony *754 and the recovery in Adams’s residence of the 9mm cartridges matching those found near Hairston’s body along with a pistol cleaning kit suitable for a firearm of the same type and caliber used to commit the murder.
Where the erroneous admission of evidence is not of a constitutional dimension, said error “does not affect the verdict if a reviewing court can conclude, without usurping the jury’s fact finding function, that, had the error not occurred, the verdict would have been the same.” Lavinder v. Commonwealth, 12 Va.App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (en banc); see also Hope, 8 Va.App. at 497, 386 S.E.2d at 810. We can say, with fair assurance, “after pondering all that happened without stripping the erroneous action from the whole,” Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), that it plainly appears Adams has had a fair trial and the verdict and the judgment were not substantially affected by the admission of the contents of the catalog. See Clay v. Commonwealth, 262 Va. 253, 259-60, 546 S.E.2d 728, 731 (2001); see also Code § 8.01-678.
Accordingly, we affirm Adams’s convictions.

Affirmed.

. On appeal, Adams does not raise the issue of the witness informants’ reliability. In his reply brief, Adams states "[h]ere, the missing factor did not concern any hyper technical analysis of whether or not the informant was reliable. It concerned the fundamental failure to link the place to be searched to the defendant in any way.” See Rules 5A:18 and 5A:20(e).

. At the suppression hearing, Barker testified that when he arrived at work the morning of the murder, Perry called to ask him to apply for a search warrant for Adams’s residence "because there had been a shooting in front of it that prior night.”

. Both Burton and Perry were Barker's supervisors.

. In Anzualda v. Commonwealth, 42 Va.App. 481, 592 S.E.2d 761 (2004), the defendant argued the trial court erred in denying his motion to suppress evidence seized because the warrant failed to establish probable cause and the good faith exception to the warrant requirement did not apply. A panel of this Court agreed and reversed the trial court’s ruling. The Commonwealth filed a petition for rehearing en banc. Sitting en banc, this Court reinstated the trial court’s initial ruling denying the motion to suppress, holding that the affidavit “establish[ed] a nexus (albeit an insufficient nexus for a finding of probable cause) between the [item sought] and the premises to be searched”; and thereby allowing the good faith exception to save the deficient warrant. Anzualda, 44 Va.App. at 785, 607 S.E.2d at 760.

. The trial court found there was insufficient probable cause for the search warrant because the affidavit did not link Adams to the premises to be searched. The Commonwealth did not further challenge that ruling, but rather focused its argument on whether the officers acted in good faith in executing the warrant. Thus, the only issue on appeal is whether the trial court erred in holding the evidence was admissible under the good faith exception. For the purpose of this opinion, we assume, without deciding, that the trial court correctly concluded that the underlying affidavit did not provide the magistrate with probable cause and, therefore, the search warrant was invalid.

. Though no Virginia case has adopted the principle in analyzing the good faith exception, the Virginia Supreme Court, in McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984), and Derr v. Commonwealth, 242 Va. 413, 420, 410 S.E.2d 662, 665-66 (1991), in their probable cause analyses, noted "an insufficient affidavit may be supplemented or rehabilitated by information disclosed to the issuing magistrate upon application for the search warrant." In McCary, our Supreme Court stated that the supplemental information must be *748 submitted to the magistrate "under oath or affirmation,” although the "sworn statement” need not "be reduced to writing.” 228 Va. at 231, 321 S.E.2d at 643. In Derr, our Supreme Court held that an affidavit "may be supplemented or rehabilitated with additional affidavits which contain collective facts relevant to the same offenses when those affidavits are presented, simultaneously, to the issuing magistrate by the same officer.” 242 Va. at 420, 410 S.E.2d at 666 (citation and internal quotation marks omitted). In both of these cases, the Supreme Court held the searches valid under the probable cause and good faith exception analyses. These principles guide us in analyzing the officeraffiant’s good faith belief in the existence of probable cause and reliance on the warrant.

. The affidavit also included in the list of things to be searched for "any and all videotapes, digital recordings, [and] audio recordings.” The affidavit stated that the murder occurred on "Virginia Oaks Ct.,” and the warrant stated that the particular residence for which the warrant was sought was "101 Virginia Oaks.” Both the affidavit and warrant indicated that the residence to be searched "ha[d] what appear[ed] to be a video camera on the outside.” No evidence in the record indicates that the officers found or seized any videotapes or similar items as a result of the search.
On appeal, Adams does not argue that the search warrant’s authorization to search for "any and all evidence relating to the murder ...” constituted an unconstitutional "general warrant” that failed to particularly describe the objects to be seized. See Morke v. Commonwealth, 14 Va.App. 496, 500, 419 S.E.2d 410, 413 (1992) (stating general warrants are proscribed by both the Fourth Amendment and Code § 19.2-54). Accordingly, we will not address the merits of this issue. See Rules 5A:18 and 5A:20(e).