COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Humphreys and Senior Judge Annunziata
Argued by videoconference

LINDA MENA ARREOLA, S/K/A
  LINDA MENA-ARREOLA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2074-19-2                   JUDGE ROSEMARIE ANNUNZIATA
                                                       NOVEMBER 10, 2020
COMMONWEALTH OF VIRGINIA


                 FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Bonnie L. Jones, Judge

            Ben Pavek, Assistant Public Defender, for appellant.

            A. Anne Lloyd, Assistant Attorney General (Mark R. Herring,
            Attorney General, on brief), for appellee.


        Linda Mena Arreola ("appellant") appeals her conviction for driving under the influence

of alcohol (DUI).[1]  Appellant contends that the trial court erred in denying her motion to

suppress the evidence.  Appellant argues that the police illegally detained her within the curtilage

of her home.  Thus, she contends, the trial court should have suppressed the evidence obtained

by the police as a result of the illegal seizure.  We disagree and affirm the conviction.

                                      BACKGROUND

        "On appeal of the denial of a motion to suppress, we view the evidence in the light most

favorable to the Commonwealth."  Jones v. Commonwealth, 71 Va. App. 375, 380 (2019)

(quoting Carlson v. Commonwealth, 69 Va. App. 749, 757 (2019)).  "[W]hen a defendant

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court also found appellant in violation of Code § 18.2-268.3 by unreasonably
refusing to submit a breath sample, a civil offense.  On appeal, appellant contests only her DUI
conviction, not the violation of Code § 18.2-268.3.

challenges the denial of a motion to suppress, he has the burden to show that the trial court's ruling constituted reversible error." Adams v. Commonwealth, 48 Va. App. 737, 745 (2006). "Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." Jackson v. Commonwealth, 267 Va. 666, 672 (2004).

At about 9:30 p.m. on July 4, 2018, James Rogers was with a gathering of people outside his home in Newport News. Rogers saw a dark-colored sedan, without its lights illuminated, driving "all over the road" toward the group, which included adults and children. Thinking that the driver might be intoxicated, Rogers got into a Toyota Tacoma with another male and followed the sedan after it had passed the group of people. In a 911 call, Rogers alerted the police about the situation. The sedan made three or four abrupt stops, but the car would "take back off again" in an "aggressive manner" each time Rogers got out of the Tacoma to confront the sedan's driver. Rogers and his companion followed the sedan through several turns, never losing sight of it.

At one point, the sedan pulled over and stopped. Rogers approached on foot and found appellant in the driver's seat of the car. Rogers knocked on the window to get appellant's attention. Appellant then looked at Rogers, appeared scared, and "took off down the road" again.

With the Tacoma in pursuit through several turns, appellant's sedan "clipped a telephone pole." After the collision with the pole, appellant backed up and drove away on Victoria Boulevard. Appellant circled a city block three times, then turned into a driveway. Appellant remained inside the car.

Rogers provided the police with appellant's location and license plate number. Rogers and his companion remained in the Tacoma parked across the street from the driveway, and they waited there for about five minutes for the police to arrive on the scene.

Through police radio dispatch, Officer Gomes of the Hampton police learned about the sedan's reckless movements, the license plate number on the car, and the location where it had stopped in the driveway. Gomes arrived at the location at 9:42 p.m.; Gomes confirmed that he was in the right place by contacting Rogers. Rogers told Gomes that no one had exited the sedan.

Gomes walked up the driveway and approached appellant's sedan. Appellant was in the driver's seat of the car, the driver's door was open, and the vehicle was not running. Gomes identified himself, explained his presence there, and said he had information that appellant may have hit some things with the car. At that time, Gomes detected a strong odor of alcohol coming from the vehicle. With his flashlight shining on appellant, Gomes noted that she had bloodshot and watery eyes, her speech was slurred and slow, her face was flushed, and her clothes were soiled. Gomes told appellant to stay in the car. When Gomes asked appellant where she had driven from, appellant said she was going "from home to home." Gomes asked for a driver's license, but appellant could not produce one. Appellant denied that she had been drinking alcohol. Appellant said that she wanted to go to her home, but Gomes refused. He administered "pre-exit" and other field sobriety tests, and then arrested appellant for DUI.[2]

In arguing the motion to suppress, appellant conceded that Gomes was justified in approaching her vehicle. However, appellant argued that Gomes unlawfully seized her without a warrant within the curtilage of her property when he refused to let her exit the car and go to her

---

[2] At the suppression hearing, the trial court viewed a video recorded by the officer's body worn camera during his interaction with appellant. However, this video was not introduced into evidence as an exhibit.

home.  Thus, she maintained, the trial court should suppress the results of any field sobriety tests that Gomes conducted.  The trial court found that Gomes possessed both probable cause to arrest appellant and exigent circumstances when he entered the property and denied the motion to suppress.

ANALYSIS

Appellant contends the trial court erred in refusing to suppress evidence obtained by the police based on her performance on field sobriety tests conducted both before and after she exited the car in the driveway curtilage of her home.  We disagree and affirm for the reasons that follow.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "It long has been recognized that, for Fourth Amendment purposes, the home includes more than the interior of a residence:  the amendment's protections also extend to 'the land immediately surrounding and associated with the home,' an area referred to as 'the curtilage[.]'"  Saal v. Commonwealth, 72 Va. App. ___ , ___(Oct. 13, 2020) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)).  "Because the curtilage is 'considered part of home itself for Fourth Amendment purposes[,]' the amendment's protection against unreasonable [seizures] applies to such areas."  Id. at ___ (quoting Oliver, 466 U.S. at 180).  "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred.  Such conduct thus is presumptively unreasonable [for purposes of the Fourth Amendment] absent a warrant."  Collins v. Virginia, 138 S. Ct. 1663, 1670 (2018) (citation omitted).  "[A]bsent (1) exigent circumstances and probable cause or (2) consent, law enforcement agents cannot enter the curtilage of a person's home either to search or seize without previously obtaining a warrant."  Robinson v. Commonwealth, 47 Va. App. 533, 545

(2006) (quoting <u>Jefferson v. Commonwealth</u>, 27 Va. App. 1, 16 (1998)), <u>aff'd</u>, 273 Va. 26 (2007).

We find the record supports the conclusion that when Gomes detained appellant in her car on her driveway, it was within the curtilage of her home.[3] As in the trial court, appellant concedes on appeal that the police lawfully entered the driveway and approached her vehicle. <u>Cf.</u> <u>Saal</u>, 72 Va. App. at ___ (observing that "absent any affirmative attempts to discourage trespassers, owners or possessors of private property impliedly consent to have members of the general public intrude upon certain, limited areas of their property[,]" such as the driveway). Accordingly, we accept appellant's concession that Gomes did not violate her Fourth Amendment rights when he ventured upon the driveway. <u>See</u> <u>Copeland v. Commonwealth</u>, 52 Va. App. 529, 532 (2008) (this Court is under no obligation to accept concessions of law on appeal).

"As the United States Supreme Court repeatedly has recognized, the 'touchstone of the Fourth Amendment is reasonableness.'" <u>Saal</u>, 72 Va. App. at ___ (quoting <u>Florida v. Jimeno</u>, 500 U.S. 248, 250 (1991)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." <u>Id.</u> at ___ (quoting <u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979)). In determining

---

[3] Rogers testified that appellant pulled the car into "her" driveway on Bay Avenue. Likewise, Gomes referred to the location where appellant stopped as "the driveway of her residence" and appellant's driveway. On cross-examination, the officer acknowledged that subsequent field sobriety tests occurred on "her" property. Appellant presented no independent evidence that she stopped the car on her own property and, thus, the driveway should be considered curtilage of her home. However, in the trial court the parties did not question that the location was within the curtilage of appellant's home. Nor did the Commonwealth contend that, for purposes of the Fourth Amendment, appellant did not have standing to challenge the detention under the circumstances where it occurred. Thus, we do not address these issues on appeal.

whether an action is reasonable for purposes of the Fourth Amendment, a court must examine "the totality of the circumstances" in "objective terms." Id. at ___.

Accordingly, we examine the totality of the circumstances in determining whether Gomes's conduct after he lawfully entered the property was reasonable under the Fourth Amendment. "In Terry v. Ohio, 392 U.S. 1, 30 (1968), the Supreme Court held that a police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot." Mason v. Commonwealth, 291 Va. 362, 367 (2016). It is thus lawful under the Fourth Amendment for a police officer to detain an individual upon reasonable, articulable suspicion that she is "involved in, or ha[s] recently been involved in, some form of criminal activity." Hairston v. Commonwealth, 67 Va. App. 552, 564 (2017) (quoting Logan v. Commonwealth, 19 Va. App. 437, 441 (1994) (*en banc*)).

"Similarly, probable cause to arrest exists where the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). Information provided by a known informant, rather than a police officer's "direct observations," may provide probable cause as long as "the officer has reasonable grounds to believe that the informant's statement is true." Jefferson, 27 Va. App. at 12. The "police properly may give more weight to" information provided by "a disinterested citizen" who has witnessed criminal activity than they would give to a tip from a "'criminal' informer, whose motives are less likely to be pure." Reed v. Commonwealth, 36 Va. App. 260, 267-68 (2001).

Viewing the totality of the circumstances objectively, when Gomes lawfully approached appellant in her car in the driveway he possessed, at the least, reasonable, articulable suspicion

that she had recently been involved in criminal conduct. Rogers, a disinterested citizen who witnessed appellant driving dangerously, alerted the police about the situation. Rogers saw appellant driving without lights at night, swerving all over the road, and nearly hitting the people with whom he was socializing. Rogers and a companion immediately got into a vehicle and followed appellant; they called 911 and reported the matter to the police. In the Tacoma, Rogers and the other male repeatedly tried to stop appellant. When appellant stopped the sedan several times, she drove off again after Rogers exited the vehicle. At one point, appellant struck a telephone pole. Rogers relayed all of this information by phone to the police dispatcher.

After appellant turned into the driveway, Rogers and the other male watched and waited on the scene for about five minutes before the police arrived. When Gomes reached the location, he contacted Rogers and confirmed what Rogers had seen. Gomes also confirmed that appellant's vehicle had the same license plate number as Rogers reported and that appellant had not left the car since stopping in the driveway. Considering these facts and circumstances, Gomes possessed a reasonable suspicion that the driver of the vehicle recently had committed reckless driving and hit and run, and he was entitled to detain appellant to investigate. Cf. Navarette v. California, 572 U.S. 393, 399 (2014) (holding police had reasonable suspicion to conduct a traffic stop based on a 911 caller's "eyewitness" report of dangerous driving).

During the course of a valid traffic stop, reasonable, articulable suspicion of criminal activity may "ripen[] into probable cause to arrest." Williams v. Warden, 278 Va. 641, 648 (2009). In this case, upon approaching appellant, Gomes noticed indicia that she had consumed alcohol: there was a strong alcohol odor, appellant's speech was slurred, her eyes were watery and bloodshot, and her appearance was disheveled. During the detention, appellant did not perform in a satisfactory manner upon the field sobriety tests Gomes administered. Considering these factors with Rogers's description of the reckless manner appellant had driven the car within

the previous fifteen minutes, Gomes clearly possessed probable cause to arrest appellant for DUI. See Jones v. Commonwealth, 279 Va. 52, 60 (2010).

We conclude that Gomes's actions in detaining appellant, investigating her suspected criminal conduct, and ultimately arresting her for DUI all were reasonable intrusions for purposes of the Fourth Amendment. Appellant thus sustained no violation of her Fourth Amendment rights, and we do not disturb the trial court's denial of the motion to suppress.[4]

## CONCLUSION

For the foregoing reasons, the trial court did not err in denying the motion to suppress. Accordingly, we affirm appellant's conviction.

Affirmed.

---

[4] Having reached this conclusion, we need not consider whether the trial court erred in finding that exigent circumstances justified Gomes's detention of appellant without a warrant. See Harris v. Commonwealth, 39 Va. App. 670, 676 (2003 ("[a]n appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason" under appropriate circumstances (quoting Driscoll v. Commonwealth, 14 Va. App. 449, 451-52 (1992))).