COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, AtLee and Malveaux
Argued at Norfolk, Virginia


MISHON MICHAEL TARPLEY

v.        Record No. 1364-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
NOVEMBER 21, 2023


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Matthew W. Hoffman, Judge

Richard G. Hallenback, Jr., Assistant Public Defender, for appellant.

Suzanne Seidel Richmond, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following conditional guilty pleas, the circuit court convicted Mishon Michael Tarpley of

possessing a controlled substance, in violation of Code § 18.2-250, and possessing a firearm

simultaneously with a controlled substance, in violation of Code § 18.2-308.4(B).  Tarpley's

guilty pleas were conditioned on his right to appeal the court's denial of his motion to suppress

evidence obtained after a traffic stop, which he claims violated the Fourth Amendment.[1]  Finding

no error, we affirm the convictions.

BACKGROUND

"On review of the denial of a motion to suppress, we view the evidence in the light most

favorable to the Commonwealth." *Adams v. Commonwealth*, 48 Va. App. 737, 741 (2006).

"[W]hen a defendant challenges the denial of a motion to suppress, he has the burden to show

_____

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Gary A. Mills presided at the hearing on Tarpley's motion to suppress and
entered the order denying the motion.

that the trial court's ruling constituted reversible error." *Id.* at 745. "Since the constitutionality of a search and seizure under the Fourth Amendment involves questions of law and fact, we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." *Jackson v. Commonwealth*, 267 Va. 666, 672 (2004).

While on patrol the night of March 9, 2020, Officer Andrew Gohn of the Newport News police observed a Mercedes sedan being operated with rear and rear side windows that appeared to be tinted "darker than legal" and with a license plate holder that obscured the top portion of the word "Virginia" on the license plate.[2] Based on these observations, Officer Gohn stopped the vehicle; Tarpley was the driver. When Officer Gohn approached, he noticed a strong odor of marijuana coming from the vehicle. After another officer arrived, Officer Gohn ordered Tarpley out of the vehicle and advised that the officers were detaining him for a narcotics investigation. Tarpley responded that he had "a little bit of weed" in his pocket but no narcotics. The officer placed Tarpley in handcuffs and informed him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). When searching Tarpley, the police found marijuana and cocaine. The police discovered more marijuana and cocaine, a digital scale, and a firearm in the car.

Officer Gohn tested the rear side windows of Tarpley's car and found that the tinting was within legal limits. In addition, the rear window was obscured by a sunshade, which made the window appear darker than it actually was.

The court denied the motion to suppress, finding that Officer Gohn was justified in stopping Tarpley's car based on his observations of possible illegal tint to the car's windows and

---

[2] At the suppression hearing, the Commonwealth introduced photographs of the license plate and the holder that surrounded it.

the license plate holder that partially obscured the license plate.  The court subsequently accepted

Tarpley's conditional guilty pleas and convicted him of the two offenses now on appeal.

ANALYSIS

Tarpley argues the court erred in denying his motion to suppress because the traffic stop

violated the Fourth Amendment.  He claims that Officer Gohn's reasons for making the stop—

the perceived illegal window tint and partially obscured license plate—did not amount to a

reasonable, articulable suspicion of criminal activity.[3]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

"A traffic stop is a '"seizure" of the occupants of the vehicle and therefore must be conducted in

accordance with the Fourth Amendment.'"  *Jones v. Commonwealth*, 71 Va. App. 375, 380

(2019) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).  "To justify the traffic stop, an

officer must have reasonable suspicion that the person stopped committed a crime or traffic

violation."  *Id.*; *see McCain v. Commonwealth*, 275 Va. 546, 553 (2008).  Reasonable suspicion

requires more than an "inchoate and unparticularized suspicion or 'hunch.'"  *Terry v. Ohio*, 392

U.S. 1, 27 (1968); *see also Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000).  "Reasonableness

is judged from the perspective of a reasonable officer on the scene allowing for the need of

split-second decisions and without regard to the officer's intent or motivation."  *Thompson v.*

*Commonwealth*, 54 Va. App. 1, 7 (2009) (quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727

(1995)).

"To be reasonable is not to be perfect, and so the Fourth Amendment allows for some

mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in

---

[3] Tarpley does not contend that any of the police officers' actions after the stop violated his Fourth Amendment rights.  Thus, we limit our consideration to the lawfulness of the stop itself.

the community's protection.'" *Heien*, 574 U.S. at 60-61 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). "[R]easonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Id.* at 60. "[T]hose mistakes—whether of fact or of law—must be *objectively* reasonable. We do not examine the subjective understanding of the particular officer involved." *Id.* at 66. "In determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity, a court must consider the totality of circumstances." *Parker v. Commonwealth*, 255 Va. 96, 104 (1998).

Code § 46.2-716(B) makes it unlawful to operate a motor vehicle with the license plate hidden or obscured. Specifically, the statute prohibits any bracket, frame, or holder for the license plate that "in any way alters or obscures . . . the name or abbreviated name of the state wherein the vehicle is registered." Code § 46.2-716(B)(iii). Code § 46.2-1052(B) prohibits operating a motor vehicle with any "tinted film, sun-shading material, or other colored material" on the rear or rear side windows in excess of that permitted by statute.[4]

The court determined that the traffic stop was justified by reasonable, articulable suspicion of criminal activity. The record supports this determination. Officer Gohn testified that he observed Tarpley's vehicle with rear and rear side window tinting that appeared "darker than legal" and a license plate border obstructing the word "Virginia." Photographic evidence confirmed that the license plate frame partially obstructed the word "Virginia" on the plate. The degree of obstruction is not relevant here, as the statute prohibits driving with a license plate frame that "in *any way* alters or obscures" a state's name on the license plate, Code

---

[4] Code § 46.2-1052 was subsequently amended to prohibit traffic stops based on a suspected window tint violation and to preclude admission of evidence obtained during such a stop. *See* 2020 Va. Acts Spec. Sess. I ch. 45. The court rejected Tarpley's argument that the amended version of the statute applied retroactively, and he does not challenge that ruling on appeal.

- 4 -

§ 46.2-716(B) (emphasis added), and "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition," *Heien*, 574 U.S. at 60.

Similarly, the fact that Tarpley's windows did not violate the tinting statute does not negate the court's finding that the stop was objectively reasonable. Code § 46.2-1052 regulates window tinting according to percentages of "light transmittance." It would be unreasonable to require police to determine the tinting percentage of a window before stopping a vehicle to investigate a violation—especially when, as here, the traffic stop occurred at night and one window was obscured by a sunshade. *See Mason v. Commonwealth*, 291 Va. 362, 371 (2016) (holding that a police officer's observation of a parking pass hanging from a rear-view mirror produced reasonable suspicion of violating an obstruction-of-view statute and noting the "virtual impossibility of determining" a violation while the car is in motion); *see also Prunty v. Commonwealth*, No. 2074-00-1, slip op. at 9, 2001 WL 747731, at *3 (Va. Ct. App. July 3, 2001) (holding that reasonable suspicion does not require an officer to know "the precise amount of [window] tinting allowable by law" before making a traffic stop to investigate a possible violation).[5] Here, the record reflects that Officer Gohn's observations produced more than a "hunch" that Tarpley's car had illegal window tinting. *Terry*, 392 U.S. at 27.

Based on the objective facts and circumstances presented by the Commonwealth, it was reasonable for an officer in Officer Gohn's position to suspect that Tarpley was operating a vehicle with equipment violations; thus the officer was justified in stopping Tarpley. Because the police did not seize Tarpley in violation of his Fourth Amendment rights, the circuit court did not err in denying the motion to suppress the evidence.

*Affirmed.*

---

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012); *see* Rule 5A:1(f).