Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Russell, S.J.

GERMAINE DELANO ADAMS

v.  Record No. 062674  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        February 29, 2008
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

A jury convicted Germaine Delano Adams of the second-degree murder of Christopher Junior Hairston and the use of a firearm in the commission of a felony.  The primary issue in this appeal concerns the good-faith exception to the exclusionary rule as set forth in United States v. Leon, 468 U.S. 897 (1984), and whether it applies in this case.  Because we conclude that a reasonably well trained police officer would not have known that a search of Adams' residence was illegal despite a magistrate's issuance of a search warrant, we will affirm the judgment of the Court of Appeals of Virginia holding that the good-faith exception applies and that the trial court therefore did not err in admitting into evidence items seized during the search of Adams' residence.

I. RELEVANT FACTS AND PROCEEDINGS[1]

_____

[1] Additional facts relevant to an issue unrelated to the good-faith exception will be set forth under a separate heading in this opinion.

In the early morning hours of June 18, 2004, James Vaught, a sergeant with the Henry County Sheriff's Office, responded to a call concerning a shooting at the Virginia Oaks Trailer Park. Upon arriving at the scene of the shooting, Vaught discovered the body of Hairston lying face down in the road to the trailer park. An autopsy of the body revealed that the cause of death was a gunshot wound to Hairston's neck. Vaught also discovered four shell casings near the body that were subsequently determined to have been fired from a 9mm Glock pistol.

Later that day, Scott Barker, an investigator with the Henry County Sheriff's Office, prepared and signed under oath a criminal complaint based on information received from other police officers who had investigated the shooting. In the complaint, Barker stated:

> [T]he accused – Germaine Delano Adams shot the victim Christopher Junior Hairston in the neck which resulted in the death of the victim. The incident occurred at approximately 0137 hrs on Virginia Oaks Ct. in Henry County, Va. Just prior to the shooting Germaine Delano Adams and Christopher Junior Hairston were arguing over $20 that Christopher J. Hairston owed Germaine D. Adams.

The complaint also listed Adams' address as "101 Va. Oaks Ct., Ridgeway, Va. 24148."

About 19 minutes after executing the criminal complaint before a magistrate, Barker signed an affidavit

2

for a search warrant before the same magistrate.  In the affidavit, Barker stated that Hairston had received a fatal gunshot wound to his neck at approximately 1:37 a.m. on June 18, 2004, "while he was on Virginia Oaks Ct."  Barker further stated in the affidavit that "[b]ased on witness statements, the victim Christopher Junior Hairston was in a [sic] arguement [sic] with Germaine Delano Adams at the time he was shot."  Barker described the place to be searched by providing the following information:

> Turn on to Virginia Oaks Ct. from Axton Rd. . . .
> The trailor [sic] to be searched will be the
> third trailor [sic] on the left on Virginia Oaks
> Ct.  The residence is light grey [sic] with dark
> grey [sic] trim.  The residence has a front wood
> stoop with three steps and two rails.  The
> residence has a white front door and a satellite
> dish on the roof at the rear.  There are no
> visible number markings on the residence.  The
> residence has what appears to be a video camera
> on the outside.

Finally, Barker requested authorization to search for videotapes, digital recordings, audio recordings, weapons (including but not limited to a 9mm caliber weapon), ammunition, and "any and all evidence relating to the murder of Christopher Junior Hairston."

Based on the information in the affidavit, a magistrate issued a search warrant for "101 Virginia Oaks, Ridgeway, VA 24148," which the criminal complaint identified as Adams' address.  The search warrant contained

3

the same detailed information describing the place to be searched as that set forth in the affidavit and authorized a search for the items sought in the affidavit. The search warrant was executed about an hour after the magistrate issued it. The items seized during the search included a Hoppes pistol cleaning kit for various handguns including a 9mm pistol; an Uncle Mike's shoulder holster, size 15; an Uncle Mike's shoulder holster size 0; seven 9mm cartridges in a clear plastic baggie; a large gray Sentry safe; a Taurus handgun box; a Federal Hydra-shok ammunition box containing fifteen cartridges; and a packaging box for personal checks bearing the name of "Germaine D. Adams."

Prior to his jury trial in the Circuit Court of Henry County, Adams filed a motion to suppress the evidence seized at his residence pursuant to the search warrant. He asserted that the affidavit for the search warrant lacked probable cause because it failed to establish a nexus between the residence to be searched and either Adams or the shooting incident. At the hearing on the motion to suppress, the Commonwealth conceded that the affidavit was "lacking in probable cause." In fact, the Commonwealth admitted that "[t]he only nexus, reading this [affidavit] in the most favorable light to the Commonwealth, is that Christopher Junior Hairston was shot to death on Virginia

4

Oaks Court in Henry County" and "we don't know from this [affidavit] whose residence" was to be searched.  The Commonwealth, however, relied on the good-faith exception to the exclusionary rule set forth in Leon and urged the trial court to deny the motion to suppress.

Initially, the trial court sustained the motion to suppress, deciding that the good-faith exception did not apply because the "search warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence as unreasonable."  The court, however, subsequently granted the Commonwealth's motion to reconsider its ruling in light of the decision in Anzualda v. Commonwealth, 44 Va. App. 764, 607 S.E.2d 749 (2005) (en banc).[2]  Upon reconsideration, the trial court applied the good-faith exception because it found some indicia of probable cause in the affidavit for the search warrant.  According to the trial court, "[t]he officer acted reasonably in believing the warrant to be valid."  The circuit court thus denied Adams' motion to suppress the evidence seized during the search of his residence.

---

[2] In Anzualda, the Court of Appeals applied the good-faith exception, finding that, because the police officer could infer that the defendant would keep a particular pistol at his home, the affidavit "establish[ed] a nexus – however slight - between the item sought and the premises to be searched."  44 Va. App. at 784, 607 S.E.2d at 759.

The Court of Appeals, in affirming the trial court's judgment denying the motion to suppress, held that "a reasonable officer, acting in objective good faith, reviewing the facts presented under oath to the magistrate, could have believed the magistrate had probable cause to issue the search warrant for Adams'[] residence and that he could, therefore, rely on the warrant." Adams v. Commonwealth, 48 Va. App. 737, 749, 635 S.E.2d 20, 26 (2006). The Court of Appeals concluded "the officer relied in good faith on evidence before the magistrate, as indicated in the written facts sworn to under oath contained in the complaint and affidavit." Id. at 750, 635 S.E.2d at 26 (emphasis added).

We awarded Adams this appeal. Adams challenges the holding of the Court of Appeals that the good-faith exception to the exclusionary rule applies in this case, its reliance on the criminal complaint in addition to the search warrant affidavit, and the fact that the Court of Appeals sua sponte considered the criminal complaint. Adams also challenges the Court of Appeals' additional holding that the admission of certain hearsay testimony

concerning the contents of a gun and accessories catalogue was harmless error.[3]

## II. ANALYSIS

"In reviewing the denial of a motion to suppress based on the alleged violation of an individual's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth." Ward v. Commonwealth, 273 Va. 211, 218, 639 S.E.2d 269, 272 (2007) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). A defendant has the burden to show that a trial court committed reversible error. Ward, 273 Va. at 218, 639 S.E.2d at 272. Because there are no facts in dispute with regard to the motion to suppress, the applicability of the Leon exception in this case is purely a legal determination. See United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004). We review a trial court's application of the law de novo. Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

In light of Adams' challenge to the Court of Appeals' reliance on the criminal complaint along with the search warrant affidavit, we will first address whether, when making the good-faith inquiry, a court may consider the

---

[3] As previously stated, the facts with regard to this issue will be summarized in a separate section of this

7

totality of the circumstances surrounding the issuance and execution of a search warrant.  We will then determine whether a reasonably well trained police officer would have known that the search of Adams' house was illegal despite the magistrate's issuance of the search warrant.  Finally, we will address Adams' challenge to the admission of certain hearsay testimony.

### A. Totality of the Circumstances

In <u>Leon</u>, the Supreme Court of the United States limited the application of the exclusionary rule "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."  468 U.S. at 905.  The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  468 U.S. at 922 n.23.  Adams, however, argues that the Court of Appeals erred by relying on the criminal complaint in conjunction with the search warrant affidavit in making its good-faith determination.  In other words, Adams contends that the good-faith inquiry is limited to the sworn, written facts

opinion.

8

set forth in the four corners of the search warrant affidavit.  We do not agree.

The Supreme Court stated in Leon that its "evaluation of the costs and benefits of suppressing reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate leads to the conclusion that such evidence should be admissible in the prosecution's case in chief."  468 U.S. at 913.  Although "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant . . . must be objectively reasonable," the Court specifically held that "all of the circumstances – including whether the warrant application had previously been rejected by a different magistrate – may be considered" when deciding whether a reasonable officer "would have known that the search was illegal despite the magistrate's authorization."  Id. at 922 & n.23 (emphasis added).

Indeed, the Court considered "all of the circumstances" in Massachusetts v. Sheppard, 468 U.S. 981 (1984), decided the same day as Leon.  There, a detective needed to search a defendant's residence for items connected to a murder, but the detective used search warrant forms designed for requests to search for

controlled substances. Id. at 984-85. The detective made appropriate changes to the forms but failed to delete the reference to "controlled substance[s]" on the warrant application that, when executed, would constitute the search warrant itself. Id. at 985. The detective presented the search warrant application to a judge and told the judge about not only the changes he had made on the forms but also those on the warrant application that were still needed. Id. at 986. The judge, after deciding to issue the search warrant as requested, informed the detective that he would make the additional, necessary changes; however, the judge failed to "change the substantive portion of the warrant, which continued to authorize a search for controlled substances; nor did he alter the form so as to incorporate the affidavit." Id.

At a pretrial hearing, the defendant moved to suppress the items seized during the search, asserting that the search warrant was constitutionally defective because the description of the items to be seized was totally inaccurate. Id. at 987-88 n.5. The question before the Supreme Court was "whether there was an objectively reasonable basis for the officers' mistaken belief" that the search warrant as issued authorized the search they conducted. Id. at 988. In concluding that "a reasonable

10

police officer would have concluded . . . that the warrant authorized a search for the materials outlined in the affidavit," the Court considered several factors not included in the four corners of the search warrant affidavit:

> [The detective] prepared an affidavit which was reviewed and approved by the [prosecuting attorney.] He presented that affidavit to a neutral judge. The judge concluded that the affidavit established probable cause to search [the defendant's] residence, and informed [the detective] that he would authorize the search as requested. [The detective] then produced the warrant form and informed the judge that it might need to be changed. He was told by the judge that the necessary changes would be made. He then observed the judge make some changes and received the warrant.

Id. at 989. The Court rejected the defendant's argument that, since the detective knew the warrant form was defective without the necessary changes, the detective should have examined the search warrant to insure that the required changes had been made. Id. at 989-90. The Court "refuse[d] to rule that an officer is required to disbelieve a judge who has just advised him . . . that the warrant he possesses authorizes him to conduct the search he has requested." Id.

Similarly, in United States v. Dickerson, 166 F.3d 667 (4th Cir. 1999), rev'd on other grounds, 530 U.S. 428 (2000), the court considered the totality of the

11

circumstances in deciding whether a search warrant was "so facially deficient as to preclude reasonable reliance upon it." Id. at 694. The search warrant supposedly lacked sufficient particularities in describing the items to be seized. Id. In making the good-faith inquiry, the court considered, among other things, the fact that the lead police officer during the search "was familiar not only with the specifics of the bank robbery in question, but, perhaps as important, had been investigating bank robberies for seven years and thus was very familiar with the type of evidence to look for." Id. at 695.

Certainly, when deciding the question of probable cause, we consider only those sworn, written facts stated in the search warrant affidavit. See Whiteley v. Warden, 401 U.S. 560, 565 n.8 (1971). We may also use information simultaneously presented to a magistrate by sworn oral testimony, see McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984), or in supplemental affidavits, see Derr v. Commonwealth, 242 Va. 413, 420, 410 S.E.2d 662, 666 (1991). But, we can, and should, "look to the totality of the circumstances including what [the executing police officers] knew but did not include in [the] affidavit" when conducting the good-faith analysis. United States v. Martin, 833 F.2d 752, 756 (8th Cir. 1987); see Anderson v.

12

Creighton, 483 U.S. 635, 641 (1987) (explaining that when assessing the good faith of a police officer who conducted a warrantless search, "the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials" and that the relevant question is objective though fact-specific).

Numerous courts have not confined their good-faith inquiry to the four corners of a search warrant affidavit. See, e.g., United States v. Frazier, 423 F.3d 526, 535-36 (6th Cir. 2005) ("[A] court reviewing an officer's good faith under Leon may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate."); United States v. Procopio, 88 F.3d 21, 28 (1st Cir. 1996) (in assessing a police officer's good faith, the court looked beyond the four corners of the affidavit); United States v. Dickerson, 975 F.2d 1245, 1250 (7th Cir. 1992) (in applying the good-faith exception, the court found that the officers conducting the search had more than probable cause even though certain information in their possession had not been included in the affidavit for the search warrant); United States v. Curry, 911 F.2d 72, 78 (8th Cir. 1990) ("[I]n

13

assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed."); United States v. Taxacher, 902 F.2d 867, 872 (11th Cir. 1990) (in ascertaining whether the good-faith exception applies, the totality of the circumstances may be considered (citing Leon, 468 U.S. at 922 n.23)); United States v. Buck, 813 F.2d 588, 592-93 (2d Cir. 1987) (court went beyond the four corners of the affidavit in making the good-faith inquiry); Sims v. State, 969 S.W.2d 657, 660 (Ark. 1998) ("[W]hen assessing good faith, we can and must look to the totality of the circumstances, including what the affiant knew, but did not include in his affidavit."); Williams v. State, 528 N.E.2d 496, 500 (Ind. Ct. App. 1988) (looking to the totality of the circumstances when applying the good-faith exception to determine reliability of an informant); Moore v. Commonwealth, 159 S.W.3d 325, 328 (Ky. 2005) ("Considering all of the circumstances, including information known to the police officer and not set forth in the affidavit, it is readily apparent that the officer acted in good faith and in accordance with the [good-faith] exception."); State v. Varnado, 675 So.2d 268, 270 (La.

14

1996) ("The reasonableness inquiry under <u>Leon</u> is an objective one which turns on the totality of the circumstances surrounding the issuance of the warrant."); <u>State v. Edmonson</u>, 598 N.W.2d 450, 461 (Neb. 1999) (a court, "in assessing the good faith of an officer's conducting a search pursuant to a warrant,. . . must look to the totality of the circumstances surrounding the issuance of the warrant, including information not contained within the four corners of the affidavit"); <u>Moffett v. State</u>, 716 S.W.2d 558, 566 (Tex. Ct. App. 1986) (holding that the <u>Leon</u> test for whether evidence is admissible "is an objective one; whether, considering all the circumstances, a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization").

A good-faith analysis that takes into account the totality of the circumstances is entirely consistent with the purposes of the exclusionary rule and the good-faith exception. <u>Edmonson</u>, 598 N.W.2d at 460-61. The purpose of the exclusionary rule is to "deter police misconduct rather than to punish the errors of judges and magistrates." <u>Leon</u>, 468 U.S. at 916. "This deterrent is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the

15

warrant." Derr, 242 Va. at 422, 410 S.E.2d at 667; accord

Ward, 273 Va. at 222, 639 S.E.2d at 274; Polston v.

Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998).

> "The deterrent purpose of the exclusionary rule
> necessarily assumes that the police have engaged
> in willful, or at the very least negligent,
> conduct which has deprived the defendant of some
> right.  By refusing to admit evidence gained as a
> result of such conduct, the courts hope to
> instill in those particular investigating
> officers, or in their future counterparts, a
> greater degree of care toward the rights of an
> accused.  Where the official action was pursued
> in complete good faith, however, the deterrence
> rationale loses much of its force."

United States v. Peltier, 422 U.S. 531, 539 (1975) (quoting

Michigan v. Tucker, 417 U.S. 433, 447 (1974)).  "In short,

where the officer's conduct is objectively reasonable,

'excluding the evidence will not further the ends of the

exclusionary rule in any appreciable way; for it is

painfully apparent that . . . the officer is acting as a

reasonable officer would and should act in similar

circumstances.' " Leon, 468 U.S. at 919-20 (quoting Stone

v. Powell, 428 U.S. 465, 539-40 (1976) (White, J.,

dissenting)).

In recognition that the deterrent purpose of the

exclusionary rule is not well-served when a police officer

executes a search warrant in objective good faith, the Leon

exception was designed "to limit the application of the

16

exclusionary rule to those instances when it will most effectively serve to deter police misconduct." Edmonson, 598 N.W.2d at 461. The purpose of the good-faith exception is, therefore, best accomplished by looking at the totality of the circumstances surrounding the issuance and execution of the search warrant. Id. While the totality of the circumstances does not include the subjective beliefs of police officers who seize evidence pursuant to a subsequently invalidated search warrant, see Leon, 468 U.S. at 922 n.23, it does, at a minimum, take into account information known to police officers that was not included in the search warrant affidavit. To confine the good-faith analysis to the facts set forth in the four corners of the search warrant affidavit (even if the analysis also considers additional information presented to the magistrate) changes the focus of the inquiry from the objective good faith of a reasonably well-trained police officer to a magistrate's determination of probable cause. It also leads to the exclusion of competent evidence in the prosecution's case in chief even though reasonably well-trained police officers acted in objective good-faith reliance on a search warrant. This approach undermines the purposes of both the exclusionary rule and its good-faith exception.

We thus conclude that the totality of the circumstances should be considered when deciding the question of good faith.  In the case before us, those circumstances include "the knowledge that an officer in the searching officer's position would have possessed," Curry, 911 F.2d at 78, i.e., a police officer with knowledge of the facts Barker possessed.  Barker executed the criminal complaint.  Thus, he certainly knew what information the complaint contained.  He also participated in the search of Adams' residence.  Thus, the sworn, written facts set forth in the criminal complaint comprise part of the total circumstances surrounding the issuance and execution of the search warrant that we should consider in making the good-faith inquiry.  That brings us to the next question: Does the Leon good-faith exception apply in this case?

## B. Good-Faith Exception

"An officer's decision to obtain a warrant is prima facie evidence that he or she was acting in good faith." United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002); see also Leon, 468 U.S. at 921 n.21.  "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."

Leon, 468 U.S. at 922 (internal quotation marks, citations and brackets omitted); accord United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003). As we explained in Polston, "[i]n Leon, the United States Supreme Court held that 'suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.' " 255 Va. at 503, 498 S.E.2d at 925 (quoting Leon, 468 U.S. at 918); see also Sheppard, 468 U.S. at 987-88.

Furthermore, the standard by which to decide whether probable cause existed for a search warrant is considerably different from the test to determine if an officer acted in good faith. The showing of an "objectively reasonable belief" that probable cause existed under the good-faith exception is a significantly lesser standard than a showing of a "substantial basis" for upholding a magistrate's determination of probable cause. See United States v. Hython, 443 F.3d 480, 484 (6th Cir. 2006) ("The showing required to establish that reliance was 'objectively reasonable' is less than the 'substantial basis' showing required to establish probable cause.") (quoting United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004)). "In fact, Leon states that the third circumstance[, the one

upon which the defendant relies,] prevents a finding of objective good faith only when an officer's affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence <u>entirely</u> unreasonable.' " <u>United States v. Bynum</u>, 293 F.3d 192, 195 (4th Cir. 2002) (quoting <u>Leon</u>, 468 U.S. at 923) (emphasis added). " 'Entirely unreasonable' is not a phrase often used by the Supreme Court." <u>Carpenter</u>, 341 F.3d at 670.

An officer also is not required to go behind a magistrate's probable cause determination to ascertain whether probable cause actually existed. See <u>Sheppard</u>, 468 U.S. at 989-90 ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."); <u>Buck</u>, 813 F.2d at 593 ("The exclusionary rule's deterrent function is not served by penalizing officers who rely upon the objectively reasonable legal conclusions of an issuing judge."). The United States Supreme Court in <u>Leon</u> made this point explicit:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his

judgment that the form of the warrant is technically sufficient.  "[Once] the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law."  Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

Leon, 468 U.S. at 921 (alteration in original) (citation omitted).

In this case, the Commonwealth conceded that the affidavit for the search warrant lacked a sufficient factual nexus between the items sought and the residence to be searched to establish probable cause.  Irrespective of whether that concession was correct, the circuit court's legal conclusion to that effect is the law of this case.  However, the totality of the circumstances, meaning the sworn, written facts in the criminal complaint along with those in the search warrant affidavit, fully support a finding that the executing officers acted in good-faith.  In other words, "the record does not reflect that the executing officers knew or should have reasonably known that their reliance on the warrant was objectively unreasonable."  Ward, 273 Va. at 224, 639 S.E.2d at 275.

The search warrant affidavit described in detail the residence to be searched and the items sought.  It also specifically stated that the residence was located in

21

"Virginia Oaks [Court]" and that "Christopher Junior Hairston received [the] gunshot wound while he was on Virginia Oaks [Court]." We know from the criminal complaint that Adams shot Hairston and that the incident occurred on Virginia Oaks Court. The criminal complaint also lists Adams' address as "101 Va. Oaks Ct. Ridgeway, Va." Notably, the search warrant authorized a search of the residence located at "101 Virginia Oaks."[4] Armed with this information, "a reasonably well trained officer would [not] have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23.

Even if we restrict our analysis to the four corners of the search warrant affidavit as Adams urges us to do, we reach the same conclusion. The affidavit was not a "bare-bones" affidavit. United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996) ("An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying

---

[4] The fact that the magistrate issued the search warrant for the residence located at "101 Virginia Oaks" demonstrates that the magistrate considered the information in the criminal complaint when deciding whether probable cause existed for issuance of the search warrant. Approximately nineteen minutes after he executed the criminal complaint, Barker submitted the affidavit for the search warrant to the same magistrate. Common sense tells us that the magistrate remained cognizant of the information in the criminal complaint when determining whether probable cause existed for issuance of the search warrant.

22

factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare-bones' affidavit."). The affidavit stated facts, not mere suspicions or conclusions, and provided a "minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity." Carpenter, 360 F.3d at 596.[5] The affidavit described the residence to be searched and the items sought with particularity. It also recounted the fact that Adams and Hairston were arguing when Hairston was fatally shot on Virginia Oaks Court. And, the search warrant authorized a search of the residence located at "101 Virginia Oaks." It is not difficult to read the affidavit and fail to realize that Barker did not supply the one additional fact stating that Adams resided at 101 Virginia Oaks Court. Thus, we conclude that Barker and the other police officers conducting the search had the objectively reasonable belief that the affidavit established probable cause for the

---

[5] In Carpenter, the court concluded that "[t]he facts that marijuana was growing 'near' the residence and that a road ran nearby [fell] short of establishing the required nexus between the . . . residence [to be searched] and evidence of marijuana manufacturing." 360 F.3d at 594. Nevertheless, the court concluded that "the affidavit was not completely devoid of any nexus between the residence and the marijuana" and that the good-faith exception therefore applied. Id. at 595-96.

search.  We cannot conclude that the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[6]  Leon, 468 U.S. at 923.

To hold otherwise would require police officers to possess the skills and understanding of a trained lawyer and further require them to go behind a magistrate's determination of probable cause and make their own decision as to whether probable cause in fact exists.  But, "[w]e realize that search warrants 'are normally drafted by non-lawyers in the midst and haste of a criminal investigation.' "  Drumheller v. Commonwealth, 223 Va. 695, 698, 292 S.E.2d 602, 604 (1982) (quoting United States v. Ventresca, 380 U.S. 102, 108 (1965)).  Furthermore, it is beyond dispute that "police officers are not expected to be lawyers" and thus are not required to possess the knowledge of a trained attorney in making the objective determination that an affidavit supports a finding of probable cause by a magistrate.  Scarbrough v. Myles, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001); see also Davis v. Scherer, 468 U.S. 183,

_____

[6] In light of our conclusion that the search warrant affidavit alone justifies application of the good-faith exception, it is not necessary to address Adams' assertion that the Court of Appeals erred by sua sponte relying on the criminal complaint along with the affidavit.

196 n.13 (1984) (stating that it is unfair and impracticable to hold public officials to the same standard of understanding as trained lawyers).

In sum, none of the evils identified in Leon that render the good-faith exception inapplicable are present in this case.  See Polston, 255 Va. at 504, 498 S.E.2d at 926.  For these reasons, we conclude that the good-faith exception to the exclusionary rule applies and that the Court of Appeals therefore did not err in upholding the trial court's decision to admit into evidence the items seized during the search of Adams' residence.  That conclusion brings us to the last issue.

### C. Hearsay Evidence

The trial court admitted, over Adams' hearsay objection, Barker's testimony concerning information contained in an "Uncle Mike's" gun and accessories catalogue.  "Uncle Mike's" was the manufacturer of the two shoulder holsters seized during the search of Adams' residence.  Barker testified that, according to "Uncle Mike's," the size 15 shoulder holster would fit a 9mm Glock pistol, which was the type of weapon used to shoot Hairston.

The Court of Appeals assumed, without deciding, that the trial court erred in admitting the challenged

25

testimony, but concluded that such error was harmless. Adams, 48 Va. App. at 753, 635 S.E.2d at 27. We agree. As the Court of Appeals noted, an eyewitness testified that Adams shot Hairston. Furthermore, 9mm cartridges matching those found near Hairston's body, along with a pistol cleaning kit suitable for a firearm of the same type and caliber used to shoot Hairston, were found during the search of Adams' residence.

The admission of the challenged testimony, if error, was nonconstitutional harmless error. The test for nonconstitutional harmless error states:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (omissions in original) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)); accord Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007). Applying this test, we can say with assurance that

the jury's verdict was not influenced by Barker's testimony about the information contained in the catalogue.

III. CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

JUSTICE KOONTZ, with whom CHIEF JUSTICE HASSELL and JUSTICE KEENAN join, dissenting.

I respectfully dissent. The issue in this case requires us to review the trial court's application of the good-faith exception to the exclusionary rule established by the United States Supreme Court in <u>United States v. Leon</u>, 468 U.S. 897 (1984). The specific focus of the issue, as it was presented in the trial court, is whether the affidavit supporting the search warrant in question was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Id.</u> at 923. In my view, when the analysis properly is restricted to the issue as it was presented in the trial court, the result of the majority's decision today permits the search of a private residence solely because a crime allegedly occurred on the same street where the home was located. This result effectively strips the third component of the <u>Leon</u> good-faith exception of any

27

substantive content, permitting the admission of evidence obtained from a search warrant that contains no indicia of probable cause.

The facts of the case are undisputed and adequately recited in the majority opinion. Repetition of those facts here would unnecessarily add length to this dissent. Moreover, the parameters of the Leon good-faith exception and the application of the "totality of the circumstances" analysis of that exception are not my focus here. Indeed, if this case properly presented the issue of whether "the officer relied in good faith on evidence before the magistrate, as indicated in the written facts sworn to under oath contained in the [criminal] complaint and affidavit [for the search warrant]" as addressed sua sponte by the Court of Appeals, Adams v. Commonwealth, 48 Va. App. 737, 750, 635 S.E.2d 20, 26 (2006) (emphasis added), and now by the majority here, we would have been presented with an entirely different case.

However, such is simply not the case presented in this appeal. During the suppression hearing, the Commonwealth did not present any evidence that the magistrate had considered the complaint in conjunction with the affidavit when determining probable cause to issue the search warrant. Nor did the Commonwealth ask the trial court to

28

consider either the magistrate's or the officer's knowledge of the facts contained in the complaint in order to determine whether the officer' reliance on the warrant was reasonable.  Clearly, the Commonwealth did not choose to argue that the criminal complaint was part of the "totality of the circumstances" the trial court should consider in undertaking the Leon good-faith analysis.  In short, the majority has essentially decided a case that is not before this Court by considering an argument that was never made to the trial court, cf. Jackson v. Commonwealth, 266 Va. 423, 436 n.1, 587 S.E.2d 532, 542 n.1 (2003) (holding that the Commonwealth may not assert an argument not presented below as a basis for upholding the trial court's judgment), and considering evidence that was not before the trial court in making its ruling, cf. Ward v. Charlton, 177 Va. 101, 107, 12 S.E.2d 791, 792 (1941) (holding that on appeal this Court is "limited to the record of the proceedings which have taken place in the lower court and have been there settled"). See also Woodfin v. Commonwealth, 236 Va. 89, 97-98, 372 S.E.2d 377, 382 (1988); Bryant v. Commonwealth, 189 Va. 310, 320, 53 S.E.2d 54, 59 (1949).

The majority's observation that "[c]ommon sense tells us that the magistrate remained cognizant of the information in the criminal complaint when determining

29

whether probable cause existed for issuance of the search warrant" may be a valid observation of human nature. However, an appellate court should not have to speculate what "common sense" might suggest when the record adequately demonstrates what evidence the trial court actually considered.  In this case, the trial court clearly restricted its consideration of the affidavit in addressing the Leon good-faith issue presented by the Commonwealth's evidence and supporting assertions.

In short, it is my view that the Court of Appeals erred by relying sua sponte on the facts asserted in the criminal complaint to support its determination that the trial court did not err in finding that the Leon good-faith exception should apply in this case.  By asserting the correctness of the Court of Appeals' decision in that regard, the Commonwealth now presents to this Court an argument that perhaps it ought to have presented in the trial court, but one which it failed to make there and in the Court of Appeals.  By giving heed to that argument, the majority is deciding a case that is not supported by the trial record to which we should confine our review.  That record restricts our consideration to the issue whether the trial court erred in finding that evidence obtained through a search warrant, defective on its face, was nonetheless

admissible because the affidavit supporting the search warrant had sufficient indicia of probable cause to reasonably support the officer's belief in the warrant's validity.

When, as here, an officer executes a search warrant that is not supported by probable cause, the officer's reliance on that warrant must be objectively reasonable for a court to conclude that the evidence seized is admissible because it was obtained in good faith. Leon, 468 U.S. at 922; Ward v. Commonwealth, 273 Va. 211, 223, 639 S.E.2d 269, 275 (2007); Polston v. Commonwealth, 255 Va. 500, 503-04, 498 S.E.2d 924, 925-26 (1998); Derr v. Commonwealth, 242 Va. 413, 422-23, 410 S.E.2d 662, 667 (1991). However, if an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," a law enforcement officer may not claim that he served the warrant in good faith. Leon, 468 U.S. at 923; accord Ward, 273 Va. at 222-23, 639 S.E.2d at 274; Polston, 255 Va. at 503, 498 S.E.2d at 925-26; United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004); United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004). Thus, the issue before us is whether the law enforcement officer executing the present search warrant had an objectively reasonable basis for believing that the warrant

was issued properly.  See Leon, 468 U.S. at 923; Ward, 273 Va. at 223-24, 639 S.E.2d at 275; Polston, 225 Va. at 503-04, 498 S.E.2d at 926-26.

The majority concludes that the search warrant and affidavit established a "minimally sufficient nexus" between the crime and the place to be searched.  Yet, apart from stating this bare conclusion, the majority does not attempt to explain the purported nexus or identify any supporting factual basis for that conclusion.

The subjective beliefs or considerations of the officer executing the search warrant are irrelevant to the present analysis.  As the Supreme Court stated in Leon, courts must "eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant."  Id. at 923; see also Ward, 273 Va. at 224, 639 S.E.2d at 275.  Under the majority's application of the Leon good-faith exception, however, officers would be permitted to act on supposition and subjective belief, using a warrant and affidavit lacking any stated nexus between a crime and a particular home to search that home merely because it is located near a crime scene.

In my view, the present affidavit is no better than a prohibited "bare bones" affidavit because it fails to

provide any factual basis establishing a nexus between the crime and the residence searched, and requires an officer to rely on unstated suspicions, beliefs, and conclusions to provide that missing nexus.  See United States v. Pope, 467 F.3d 912, 920 (5th Cir. 2006)(explaining that "bare bones" affidavits contain wholly conclusory statements and lack facts and circumstances from which a magistrate can independently determine probable cause); see also United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996); United States v. Wilhelm, 80 F.3d 116, 121 (4th Cir. 1996). A consideration of the particular information missing from the present affidavit underscores this conclusion.

The affidavit does not allege that any particular individual committed, or was suspected of having committed, any crime.  The affidavit also fails to state any connection between Adams and the residence described in the warrant.  In addition, the affidavit fails to state any facts tending to show that a search of the residence would yield any items related to the crime that occurred at an unspecified location on the street.  The fact that the residence was described as having what appeared to be a video camera affixed outside did not provide the required nexus, because the affidavit did not state that the shooting, or other activity related to the crime, occurred

in front of the home or within a reasonable distance from the purported video camera.

The only relationship established in the search warrant and affidavit between the crime and the home searched was the fact that Hairston was shot on the same street where the residence was located.  Although the search ultimately revealed evidence suggesting that the home was Adams' residence, nothing in the warrant or the affidavit indicated that a search of that residence would yield any evidence relating to the crime.  In the absence of any such facts in the affidavit linking Adams to the crime, or the crime to the described residence or its contents, the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Leon, 468 U.S. at 923. Thus, a law enforcement officer would lack an objectively reasonable basis on which to conclude that the warrant was properly issued.  See id. at 923; Ward, 273 Va. at 223, 639 S.E.2d at 275; Polston, 255 Va. at 504, 498 S.E.2d at 926.

As the majority observes, this Court should not require that law enforcement officers executing search warrants have the legal skills and technical understanding of lawyers.  However, in accordance with the decision in Leon, courts must hold law enforcement officers accountable

34

for applying the education and training they have received as law enforcement officers when determining whether they have acted in good faith in the execution of their duties. See 468 U.S. at 920. Thus, I would hold that because the record does not show that there was an objectively reasonable basis on which a law enforcement officer could conclude that the present warrant was properly issued, the Court of Appeals erred in approving the circuit court's denial of Adams' motion to suppress.

For these reasons, I would reverse the judgment of the Court of Appeals, and hold that the trial court erred in failing to suppress the evidence seized as a result of the execution of the defective search warrant. I would remand the case to the trial court for a new trial if the Commonwealth be so advised.