UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Petty, Russell and AtLee
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.      Record No. 2006-18-1                   JUDGE WILLIAM G. PETTY
                                               APRIL 16, 2019

ALEXANDER RAINES PEYTON


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Timothy G. Clancy (Lisa A. Mallory; Clancy & Walter, P.L.L.C., on
brief), for appellee.


The Commonwealth appeals the trial court's order granting Alexander Raines Peyton's

motion to suppress evidence seized pursuant to a search warrant.  The trial court held that the

search warrant lacked sufficient probable cause and declined to apply the good faith exception to

the exclusionary rule.  For the following reasons, we reverse the trial court's suppression of the

evidence and remand the case for further proceedings.

BACKGROUND

Alexander Raines Peyton was charged with conspiracy to possess with the intent to

distribute over half an ounce but not over five pounds of marijuana, in violation of Code

§ 18.2-248.1, and possession with the intent to sell, give, or distribute more than one-half ounce,

but less than five pounds of marijuana, in violation of Code § 18.2-248.1.  The charges were

brought as a result of evidence obtained following execution of a search warrant on 370

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Francisco Way, Newport News, Virginia.  The affidavit attached to the application for search

warrant alleged the following:

> 1.  On August 25, 2017, your affiant along with other members of the investigative team were conducting surveillance on the residence of 370 Francisco Way, Newport News, VA, 23601.  At approximately 1150 hours a passenger vehicle parked in the area of the residence and a black male was observed sitting inside of the vehicle without exiting.
>
> 2.  At approximately 1200 hours, a black male wearing a white t-shirt exited the residence of 370 Francisco Way, Newport News, VA, carrying a small object and entered the front passenger door of the vehicle that was waiting.
>
> 3.  The vehicle pulled forward and turned around in front of the residence and the black male in the passenger seat exited the vehicle and entered 370 Francisco Way, Newport News, VA.  The vehicle pulled off and other members of the investigative team followed the vehicle.
>
> 4.  The vehicle was stopped on Jefferson Avenue for a traffic violation and a small amount of marijuana was recovered.  The driver of the vehicle immediately admitted to being in possession of marijuana and provided details that matched up with the observation of your affiant and other members of the investigative team.  The driver stated he had pulled onto Francisco Way and a black male had come out and gotten into his vehicle and sold him a quantity of marijuana.  The driver stated he let the black male get out of his vehicle and return to the residence before he left the area.
>
> The statements in this affidavit are based on the totality of the investigations and not all details of the ongoing investigations are included in this affidavit.  This affidavit was prepared for the limited purpose of establishing probable cause to search the residence of 370 Francisco Way, Newport News, VA.  Additionally this affidavit is based on my training and experience as a police officer, trained narcotics investigator, and on my law enforcement investigations, debriefs of narcotics users and dealers, interviews of witnesses and surveillance of the narcotics enterprise.  Additionally it is standard practices [sic] among those involved in the distribution of narcotics to store additional narcotics and other associated contraband inside of their residence.  The statements in this affidavit are based on totality of my training and experience as a police officer and on my law enforcement investigations, debriefs of narcotics users and dealers, interviews of witnesses and surveillance of the narcotics enterprise.

The warrant sought to obtain "[a]ny marijuana, monies, ledgers, packaging materials, bank statements, firearms and any electronic data recording devices to include but not limited to cellular telephones that can be used to store evidence of narcotics activity, and any other drug related paraphernalia."

Peyton filed a motion to suppress the evidence seized at the 370 Francisco Way address, arguing that the affidavit for search warrant did not provide sufficient probable cause to search the residence. The trial court initially ruled that the affidavit set out sufficient probable cause to support the search warrant and denied the motion to suppress. After requesting additional briefing, however, the trial court reversed its prior ruling and issued a written opinion granting the motion. This appeal followed.

ANALYSIS

When the Commonwealth appeals a trial court's order to suppress evidence, "the evidence must be viewed in the light most favorable to the [appellee]." Commonwealth v. Peterson, 15 Va. App. 486, 487 (1992). The burden is on the appellant "to show that when viewing the evidence in such a manner, the trial court committed reversible error." Hairston v. Commonwealth, 67 Va. App. 552, 560 (2017). Any claim of Fourth Amendment violation presents "a mixed question of law and fact that we review *de novo* on appeal." Harris v. Commonwealth, 276 Va. 689, 694 (2008). Appellate courts "are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them" and "give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*). This Court will, however, "determine independently whether, under the law, the manner in which the evidence was obtained satisfies constitutional requirements." McCain v. Commonwealth, 261 Va. 483, 490 (2001). The same *de novo* standard applies to "the trial court's application of

defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Hayes v. Commonwealth, 29 Va. App. 647, 652 (1999).

Here, the Commonwealth argues that the trial court erred by suppressing the evidence obtained from the search warrant because there was probable cause to search the residence and, even if there was not probable cause, the trial court should have applied the good faith exception to the exclusionary rule.

"The Fourth Amendment of the United States Constitution requires that a search warrant be based upon probable cause." Sowers v. Commonwealth, 49 Va. App. 588, 595 (2007). Generally, "[w]here law enforcement officers illegally search private premises or seize property without probable cause . . . the illegally seized evidence will be excluded from evidence." Colaw v. Commonwealth, 32 Va. App. 806, 810 (2000). The exclusionary rule, created with the intent of deterring police misconduct, "operates 'as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than [to protect] a personal constitutional right of the party accused.'" United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). However, because "[t]he deterrent effect of the exclusionary rule 'is absent where an officer, *acting in objective good faith*, obtains a search warrant from a magistrate and acts within the scope of the warrant,'" Janis v. Commonwealth, 22 Va. App. 646, 653 (emphasis added) (quoting Derr v. Commonwealth, 242 Va. 413, 422 (1991)), aff'd en banc, 23 Va. App. 696 (1996), evidence seized pursuant to an invalid search warrant "is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid," Lanier v. Commonwealth, 10 Va. App. 541, 547 (1990) (citing Leon, 468 U.S. at 918-21). "It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." Leon, 468 U.S. at 921. "In the absence of an

allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926.

The Commonwealth makes a compelling argument that the affidavit provided sufficient probable cause to justify the issuance of the search warrant. We need not address that argument, however, because we can resolve the case on the narrow ground of whether the officer's reliance on the search warrant was reasonable. See Commonwealth v. White, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available." (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015))). We need only to resolve this question because, where, as here, there is room for debate over whether the affidavit established probable cause, an officer's "reliance on the magistrate's determination of probable cause" is objectively reasonable and applying "the extreme sanction of exclusion is inappropriate." Leon, 468 U.S. at 926.[1]

---

[1] The United States Supreme Court has approved a reviewing court's decision to pass on the Fourth Amendment issue and consider only the application of the good faith doctrine.

> If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice.

Leon, 468 U.S. at 925.

A police officer's reliance on a judicially authorized search warrant is not an absolute bar to a court's application of the remedy of suppression; that reliance must be objectively reasonable.

> There are four circumstances, however, where an officer cannot have an objectively reasonable belief that probable cause exists for the search and suppression is an appropriate remedy: "(1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

Lane v. Commonwealth, 51 Va. App. 565, 572 (2008) (quoting Cunningham v. Commonwealth, 49 Va. App. 605, 618 (2007)).  At the motion to suppress, Peyton argued that the third exception to the good faith rule applies, contending that the underlying affidavit was so lacking in indicia of probable cause that a reasonable police officer would not have believed that the warrant was valid.

"The showing of an 'objectively reasonable belief' that probable cause existed under the good-faith exception is a significantly lesser standard than a showing of a 'substantial basis' for upholding a magistrate's determination of probable cause."  Adams v. Commonwealth, 275 Va. 260, 274 (2008); see also Anzualda v. Commonwealth, 44 Va. App. 764, 781 (2005) (*en banc*) (noting that '"no substantial basis' does not automatically equate to 'no indicia of probable cause'").  "In fact, Leon states that the third circumstance[, the one upon which Peyton relies,] prevents a finding of objective good faith only when an officer's affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence *entirely* unreasonable.'"  Adams, 275 Va. at 274 (quoting United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002)).  Thus, "as long as there is *some* indicia of probable cause in the underlying affidavit, we will apply the good faith exception [provided that] a reasonable police officer, after assessing the

facts set forth in the affidavit, could have believed that the warrant was valid." Midkiff v.

Commonwealth, 54 Va. App. 323, 332 (2009) (quoting Anzualda, 44 Va. App. at 781).

> "[T]he inquiry must be focused on the 'flagrancy of the police
> misconduct' at issue," Davis [v. United States], 564 U.S. [229,]
> 238 [(2011)] (citation omitted), and employ the "last resort"
> remedy of exclusion only when necessary "to deter deliberate,
> reckless, or grossly negligent conduct, or in some circumstances
> recurring or systemic negligence," Herring [v. United States], 555
> U.S. [135,] 140, 144 [(2009)] (citation omitted).

Collins v. Commonwealth, ___ Va. ___, ___ (Mar. 28, 2019). See Colaw, 32 Va. App. at 813

("A police officer could not reasonably have believed that the warrant was properly issued when

it was based on a 'bare bones' affidavit that contained only conclusory assertions by a third-party

informant about a future event without supporting facts to constitute probable cause."); see also

United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir. 1996) ("An affidavit that states

suspicions, beliefs, or conclusions, without providing some underlying factual circumstances

regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit.").

The affidavit in this case had some indicia of probable cause. The underlying affidavit

was not a "bare-bones" affidavit that merely set forth conclusory allegations with no recitation of

the facts supporting those conclusions. Rather, the underlying affidavit described with

particularity the items sought, the place to be searched, and the transaction that led the police to

believe that the items sought would have been found at the place to be searched. See Atkins v.

Commonwealth, 9 Va. App. 462, 464 (1990) (holding that warrant was not based on a "bare

bones" affidavit because it "contained a detailed description of the nature of the offense, the

premises to be searched, the items for which they were searching, and the transaction which led

the informant to believe that the drugs would be in this apartment"). Here, it is hard to fathom

why a police officer would immediately recognize the affidavit to be utterly lacking in a factual

predicate of probable cause when the trial court initially ruled that the facts contained in the affidavit were sufficient to support a legal finding of probable cause.

Peyton asserted that there were no facts to suggest the residence had been used in criminal activity "other than [the seller] exited it prior to the marijuana sale and returned to it after the isolated sale." By this admission, Peyton conceded that the affidavit contained, at the very least, *some* facts to connect evidence of illegal drug distribution to the residence. Because the affidavit contained "some indicia of probable cause," a reasonable officer could have believed that the warrant was valid; and the circuit court erred when it failed to apply the good faith exception to the exclusionary rule. Anzualda, 44 Va. App. at 781. "In the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." Tart v. Commonwealth, 17 Va. App. 384, 390 (1993) (quoting Leon, 468 U.S. at 921).

The affidavit in this case is similar to the affidavit analyzed in Sowers v. Commonwealth. In Sowers, this Court affirmed the trial court's application of the good faith exception for a search warrant for Sowers's residence where police initiated a traffic stop on Sowers and found evidence of drug distribution in his possession. Sowers, 49 Va. App. at 592-93. Sowers told the officer that he had just left his residence and had used marijuana at his residence in the past. Id. at 593. The affiant also indicated that it was his experience that "narcotics and the paraphernalia [a]ssociated with the use of [n]arcotics are often hidden inside the user's residence for safe keeping." Id.

This Court held that it was not a bare bones affidavit because it "indicat[ed] Sowers possessed cocaine, had a large sum of money, and denied he was a user of cocaine. Our cases indicate these facts could support inferences about his intent." Id. at 603. Additionally, there were *some* facts to support the inference that Sowers was selling drugs—"[t]he affidavit

described the items sought and the place to be searched. Under these circumstances, a reasonable police officer could have believed the warrant was valid." Id. at 604.

Consideration of this Court's decision in Janis v. Commonwealth is also persuasive. In Janis, this Court reversed Janis's convictions, holding that the trial court erred in applying the good faith exception to the exclusionary rule. Janis, 22 Va. App. at 648. This Court held that it was error to apply the good faith exception where the underlying affidavit stated that Janis was seen entering and leaving a trail that led to and from a plot of marijuana plants. Id. at 649-50. Based on those facts, the affiant sought to search Janis's address without stating in the affidavit, however, what nexus that address had to Janis. Id. at 653. Because the officer "might just as easily have supplied the magistrate with an address belonging to an unrelated third party," we concluded that "[t]he affidavit gave absolutely no indication that the fruits of criminal activity would probably be found at that location, rendering [the officer's] belief in probable cause, based solely on the affidavit, objectively unreasonable." Id. This Court did not hold, however, that the failure to establish a sufficient nexus between the item sought and the premises to be searched automatically precluded application of the good faith exception. Rather, we held that, where the underlying affidavit failed to provide *any connection whatsoever* between the alleged criminal activity and the premises to be searched, that affidavit was so lacking in indicia of probable cause that a reasonable police officer could not have harbored an objectively reasonable belief as to the validity of the warrant. Id.

Janis, therefore, is factually distinguishable from the present case. Unlike the affidavit in Janis, which contained no information connecting the criminal activity to the premises to be searched, the affidavit here did establish a nexus between illegal drug activity and the premises to be searched. Specifically, the affidavit at issue in this case stated that Peyton left the premises to be searched while in possession of marijuana. Then after conducting an illegal drug

transaction, Peyton immediately returned to the premises. The affidavit also indicated that it is standard practice for those involved in the distribution of illegal drugs to store additional illegal substances and other associated contraband inside their residence. Furthermore, the officers sought and obtained the warrant less than two hours from when they witnessed the drug transaction outside the address. Unlike in <u>Janis</u>, the affidavit in this case stated a sufficient nexus between the items sought and the premises to be searched to apply the good faith exception to the exclusionary rule. <u>See also</u> <u>Anzualda</u>, 44 Va. App. at 784 (affirming in plurality opinion application of good faith exception despite affiant's failure to state a time frame for when Anzualda received item to be sought at his premises because affidavit was not bare bones and provided at least a slight nexus between item sought and premises to be searched).

CONCLUSION

Because we hold that there was a sufficient nexus between the illegal activity and the place to be searched to apply the good faith exception to the exclusionary rule, the trial court erred in concluding otherwise. Accordingly, we reverse the trial court's suppression of the evidence and remand the case for further proceedings.

<u>Reversed and remanded.</u>