UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Huff and AtLee
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                                     MEMORANDUM OPINION[*] BY
v.        Record No. 1166-20-3                 JUDGE RICHARD Y. ATLEE, JR.
                                                        MARCH 16, 2021
DAVID LEE THOMPSON


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
William N. Alexander, II, Judge Designate

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring, Attorney General, on briefs), for appellant.

Mark T. Williams (Williams & Light, on brief), for appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the circuit court's decision to

grant David Lee Thompson's motion to suppress evidence obtained from the search of his

residence because the affidavit in support of the search warrant lacked probable cause, and the

good faith exception to the exclusionary rule did not apply.  For the following reasons, we

reverse and remand for further proceedings.

I. BACKGROUND

In an appeal brought by the Commonwealth, we view the historical facts in the light most

favorable to the prevailing party below, in this case Thompson, and we grant him all reasonable

inferences that flow from that evidence.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067

(1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, on June 13, 2019, Investigator Nick Samuels, of the Pittsylvania County Sheriff's Office, was on patrol in a marked police cruiser. Samuels saw Thompson pull into the driveway of a residence. He recognized Thompson and knew he lived in a different house several miles away. Numerous citizens had called to complain because of a high volume of traffic coming in and out of Thompson's house at "all hours of the day and night." In Samuels' experience, such activity is consistent with selling drugs.

Samuels turned around and parked his vehicle on the side of the road near the driveway. He activated the "blue lights on the light bar" as a safety precaution in order to alert other vehicles that the cruiser was partially in the roadway. He approached Thompson, who was standing on the driver's side of his car. Samuels asked if "everything was okay," and Thompson explained that his tire was low on air. Samuels asked for identification, which Thompson provided. Samuels ran the identification and found that Thompson's license was suspended and there was a warrant for his arrest. Around this time, Investigator Johnny Owens, also with the Pittsylvania County Sheriff's Office, arrived.

Samuels told Thompson he was under arrest and placed him in handcuffs. He performed a search incident to arrest, during which he found a "small pink, reddish plastic bag" containing a white powdery substance, which he believed to be cocaine, in Thompson's front shirt pocket. Samuels and Owens searched Thompson's vehicle and recovered a handgun and a small plastic bag containing a crystalline substance.

Another officer in the area was conducting a traffic stop near Thompson's residence. He found methamphetamine on the individual, who reported that he or she had purchased it within the past twenty-four hours from Thompson's residence. This officer relayed this information to Owens.

Owens applied for a warrant to search Thompson's home. The affidavit in support of the warrant stated:

> David Thompson resides at the address [to be searched]. He was stopped earlier on a vehicle registered to a female that also resides at that location. In Thompson's possession was a substance that tested positive for Methamphetamine, and also a handgun. Thompson is a convicted felon. Another traffic stop was conducted on a different subject by another officer and Methamphetamine was found on that person. That person advised that they had purchased the Meth from Thompson at [his home] within the past 24 hours. It is believed that narcotics, and other instruments of drug distribution will be at this residence, as well as firearms.

Owens noted that he had personal knowledge of the facts in the affidavit, writing,

> I was present for the search of the vehicle Thompson was operating whereas [sic] the Meth and gun was found. I was advised by another officer about the Meth found in a separate vehicle whereas [sic] the Meth had been purchased from Thompson. I have 17 years of law enforcement experience and have been involved with over 100 drug cases.

A magistrate approved the warrant, and officers recovered from the home an "AK-47 type pistol," digital scales, a digital scale box containing small baggies, and a small baggie containing a crystal substance.

Thompson was charged with three counts of possession with intent to distribute a Schedule II substance, two counts of possession of a firearm while possessing illegal drugs, and two counts of possession of a firearm by a felon. Thompson filed three motions to suppress, challenging the adequacy of the warrant for the search of his residence, the legality of the traffic stop, and the admissibility of evidence obtained from his cell phone. The circuit court granted the first of these motions,[1] finding that the affidavit in support of the search warrant of the

---

[1] The circuit court denied the motion to suppress evidence from the traffic stop, and Thompson withdrew the motion to suppress evidence obtained from his cell phone.

residence lacked probable cause because "there's just no nexus between the stop, location of the drugs, and then their house where . . . Thompson and his girlfriend live." It found the good faith exception inapplicable:

> I don't think that just saying in good faith now saves it. The, the, Owens' had, was in good faith. I don't say he's not in good faith but that's not the real question. It's a question of whether you look at this warrant now and find a, a, good faith actions which save the warrant and I don't think it does.

As such, the evidence recovered from the search of Thompson's house was subject to the exclusionary rule and was suppressed. This pre-trial appeal followed.

## II. ANALYSIS

We will not reverse the circuit court's decision unless it is plainly wrong. Grimstead, 12 Va. App. at 1067 (citing Code § 8.01-680). Whether police action amounts to a violation of the Fourth Amendment, however, is "a mixed question of law and fact" that we review *de novo*. Hairston v. Commonwealth, 67 Va. App. 552, 560 (2017) (quoting Harris v. Commonwealth, 276 Va. 689, 695 (2008)).

We assume without deciding that the warrant here was deficient, because the good faith exception to the exclusionary rule applies, which we conclude is the best and narrowest ground for reversal. See Sanders v. Commonwealth, 64 Va. App. 734, 742 n.3 (2015) ("An appellate court decides cases on the best and narrowest ground."). "The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'" Freeman v. Commonwealth, 65 Va. App. 407, 419 (2015) (quoting Herring v. United States, 555 U.S. 135, 139 (2009)). As such, the exclusionary rule prohibits, with some exceptions, unlawfully-obtained evidence from being presented at trial. Id. The rule's "prime purpose is to deter future unlawful police conduct and

- 4 -

thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." Id. at 419-20 (quoting United States v. Calandra, 414 U.S. 338, 347 (1974)).

The "good faith" exception to the exclusionary rule exists "so as not to bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." Adams v. Commonwealth, 275 Va. 260, 268 (2008) (quoting United States v. Leon, 468 U.S. 897, 905 (1984)). In considering whether the good faith exception applies, we consider "whether a reasonably well[-]trained officer would have known that the search was illegal despite the magistrate's authorization." Id. (quoting Leon, 468 U.S. at 922 n.23). The officer's reliance on the magistrate's probable cause determination "must be objectively reasonable." Id. at 269 (quoting Leon, 468 U.S. at 922). Finally, unlike a probable cause determination, which is limited to "'only those sworn, written facts stated in the search warrant affidavit' as well as 'information simultaneously presented to a magistrate by sworn oral testimony' or in 'supplemental affidavits,'" Brown v. Commonwealth, 68 Va. App. 517, 524 (2018) (quoting Adams, 275 Va. at 270), a good faith inquiry considers the totality of the circumstances, Adams, 275 Va. at 270. This includes "what [the executing police officers] knew but did not include in [the] affidavit." Id. (alterations in original) (quoting United States v. Martin, 833 F.2d 752, 756 (8th Cir. 1987)).

Here, there is little question that Owens' reliance on the magistrate's probable cause determination was objectively reasonable, and there is nothing to indicate that he would, or should, have known that the search it authorized was possibly illegal. The affidavit set forth that drugs were found on Thompson and in his vehicle. It also included that methamphetamine was found on another individual during a traffic stop and that this individual stated he or she had purchased the methamphetamine within the past twenty-four hours from Thompson's residence,

- 5 -

providing a nexus between the drugs found on Thompson and his home.[2]  Owens was also aware that Thompson's residence had a high volume of traffic, five to ten cars every few hours, at "all hours of the day and night," indicating that drugs were being sold there.  Even though the affidavit did not include this crucial fact, we are able to consider Owens' knowledge of this in a good faith inquiry which is not confined to the four corners of the affidavit.  Adams, 275 Va. at 270.  Given the information from the two traffic stops, in conjunction with his knowledge that Thompson was a person of interest due to the suspicious activity at his home, Owens was not objectively unreasonable in relying on the warrant.  Accordingly, the circuit court erred in declining to apply the good faith exception and excluding the evidence seized from Thompson's residence during the warrant execution.

### III. CONCLUSION

For the foregoing reasons, we reverse the decision of the circuit court and remand for further proceedings.

Reversed and remanded.

---

[2] We note that the circuit court was adamant that the affidavit contained "no nexus" between the stop of Thompson and the home.  In so finding, the circuit court inherently made a factual finding that the statement from the unidentified individual about purchasing narcotics from Thompson's residence had no probative value, despite being a statement against penal interest.  See Corey v. Commonwealth, 8 Va. App. 281, 288 (1989) (detailing factors that lend credibility to hearsay from citizen-informants).  We are mindful of the deferential lens through which we view the circuit court's factual findings — in the light most favorable to Thompson, as he prevailed below.  Grimstead, 12 Va. App. at 1067.  Nevertheless, for purposes of a good faith inquiry, Owens could not reasonably be expected to know that the circuit court would so find, given that the statement had multiple indicia of reliability, because the individual both was speaking from personal, first-hand knowledge and was making a statement against his or her own penal interest.  Corey, 8 Va. App. at 288.  Even the circuit court acknowledged that although the individual was not identified, "normally that person wouldn't be identified."  We cannot say that Owens was objectively unreasonable in believing this statement provided a nexus, and therefore in relying on the magistrate's probable cause determination.